May it please the Court, Counsel, Nell Brown on behalf of the petitioner Charles Karnes, who is present in the courtroom today. First, I'd like to highlight a few important facts from the record that I think were not clear enough from my briefing. Second, I'd like to briefly address why counsel's conduct here was ineffective. And third, I hope to spend the bulk of my time on what I see as an overlapping issue of the Strickland prejudice analysis with the Sixth and Fourteenth Amendment analysis that's guided by this Court's Bradley decision, which, like this case, is a habeas case under the AEDPA, but involving due process and counsel of choice errors. And finally, if time permits, I'll address Respondent's procedural default argument, and I'd hope to save two minutes for rebuttal. Turning to the factual issues that I don't think were clear from my brief, the State says in its brief at page 29 that the trial court knew Karnes didn't want to continue the trial and didn't need any more information. This is not supported by the record nor by the law that applies here. Mr. Karnes talked with Carla French, an attorney for the Ferder Law Firm, and decided to hire that firm. He told Mr. Obert, his appointed counsel, that he wanted to retain that firm. Meanwhile, his father paid the firm's retainer. However, because the Ferder firm received money from his father, whose last name was Daniels rather than Karnes, the firm did not immediately realize that Mr. Karnes' defense had been funded. By the time the firm realized its mistake, it was shortly before that November 23rd conference. At that point, when the firm realized it had mistakenly not identified the funds, Ahmed came to Mr. Ahmed, the would-be retained attorney, came to see Mr. Karnes in custody, and they agreed that Mr. Ahmed would go to the court and ask for more time so the Ferder firm could get into the case. Ahmed then shows up at that November 23rd hearing to carry out that plan. At that hearing, neither Obert or Ahmed file any motion to continue the case or to substitute counsel. Ahmed says he didn't do this because he wasn't sure of the firm's status and also because he didn't have any staff available to him that day. But the record shows, at least at the outset of that hearing, that the parties and the court all believed Mr. Karnes would be brought to court. The court starts out the hearing by saying, shall we get Mr. Karnes? The court is saying, shall I have the bailiff walk across the street to the lockup that's attached to the courthouse by a skybridge and bring him to court? Kennedy. The prosecutor is not saying don't bring him. The prosecutor is saying, I believe, Your Honor, I have some matters to talk about to give you some background before the defendant is present. But no, I don't think he's saying he shouldn't come. And then things go in a certain direction, and then the court decides not to bring him, and no one speaks up, and either Ahmed or appointed counsel, neither of them say, bring my client to court. Because Mr. Karnes wasn't present in court, it's not until postconviction that we learn his side of the story. But Karnes tells us in postconviction through his deposition that he believed the point of the November 23rd hearing was to get in front of the judge to ask for a continuance so that he could substitute counsel of choice. And he also says that he did tell Obert immediately before trial that he wanted a continuance, but not before that November 23rd hearing because he hadn't spoken to Obert. In terms of ineffective assistance of counsel, Obert's conduct fell below the standard of care. Obert knew that Karnes was trying to retain the Ferder firm. He knew that the firm had been funded. That was clear in open court. He knew that the firm had told Karnes they would ask for more time, but he didn't It wasn't that the problem. The court ultimately decided he wasn't going to give more time. I think that that is a problem. I think that would be a factor to be considered. But what ends up happening is the court doesn't make the appropriate inquiry. Balancing the interest What prevented your client from saying when he learned all this, no, no, I'm willing to give an extension for this. I want this other guy as a lawyer. That he was well, my client wasn't there at that hearing. Wasn't there, but he was presumably told of this not long after. And there's no indication on the record that he made a peep. I don't think we can presume that he was told of this not long after. His testimony in postconviction is trial was 10 days later and that before trial he told Obert he wanted a continuance and Obert did nothing. We know from the record that Obert did nothing. I don't know the timing of when he told Obert that, but I presume it was the next time he saw Obert. Did he ever seek to communicate that to the trial court? Obert never communicated that to the trial court on Mr. Karn's behalf, and I believe that was his obligation as counsel of record to do that. Well, all right. So your claim, this claim is that Obert was ineffective, right? That is my claim. Now, you have two problems with that. One is exhaustion, right, and two is prejudice. With regard to the ineffective assistance of counsel claim, there is no argument that it is unexhausted. That claim is exhausted and the Respondent hasn't raised a procedural default argument with respect to the Strickland claim on ineffective assistance of counsel. So that claim is here to be decided on the merits by this Court. The prejudice issue for Strickland asks, but for counsel's ineffective conduct, is there a reasonable probability that the result of the case would have been different, the result of the hearing would have been different? And here, as a result of counsel's failure to object, we know that Karns wasn't present. As a result of his absence and counsel's silence at that hearing, counsel's inaction in terms of filing motions, requesting continuances, or speaking to his client's interests at all, we know that essentially there was nothing before the Court. The Court says that. Well, there's no motion before me, so I guess that's it. Kennedy, but the Court knew the circumstances. In other words, that new firm wouldn't come in without a continuance, and as Judge Clifton said, the Court said in so many words, I'm not going to give a continuance, we're going to trial. Right. And I think that's the prejudice. I think the prejudice comes from the confluence of the problems with the due process clause that he wasn't, the client wasn't present, and the Sixth Amendment right to counsel of choice. I know that, but that's a violation. What's the prejudice? The prejudice is that had Carnes been at that hearing, he could have made a difference. He could have. In what way? Well, I think. Well, what could he have said that would have changed the Court's mind? I mean, the key is the continuance, right, for the new firm to come in? Right. And I think the reasonable inference from Mr. Ahmed's statements at the November 23 hearing is that Carnes did want a continuance. However, the trial judge also had before it this pro se affidavit from a couple months earlier that Mr. Carnes had filed saying no continuances while I'm in custody. And had Mr. Carnes been there, he could have clarified that issue. He could have said I've spoken with Mr. Ahmed, I want his firm to represent me, and I'm okay with a continuance. I don't think that was a reason the Court said no continuance, not because Mr. Keith thought Mr. Carnes was objecting. In fact, he had already granted a continuance over Carnes' objection, right? He had. So I don't think that's a reason, you know, the Court said we're going to go to trial. Right. And I think that under this Court's decision in Bradley, it shows that the number of errors here is actually greater than in Bradley, because the defendant isn't present, whereas in Judge Clifton's. Be careful with Bradley, because Bradley is a confusing decision to read. It is. But the key fact there is that the continuance wasn't going to be an issue, because the new attorney who proposed to come in said he'd stick to the original trial date. That's correct, and, Your Honor, in that concurrence that you wrote, you focus on the Sixth Amendment right to counsel of choice and on the final hearing where they are asking for Attorney Jordan to come in, and the judge denies it after conducting a fairly lengthy colloquy into the reasons for whether or not counsel could be funded in that sort of stuff. This case, I think, is a stronger argument that the Sixth Amendment right to counsel of choice was violated. One, because everything's happening in one hearing. In Bradley, the majority focuses on three separate hearings, and Your Honor focuses just on the third. Well, the plurality focuses on three. In fact, the plurality isn't a majority, so that's why it's hard to read. I'm actually in the majority, because I'm the guy in the middle. Right. And the key hearing is the one where there's not going to be a problem with a continuance, because the new attorney says no continuance is necessary. Right. And the reason I think this case is more egregious error than the instance you focused on in your decision in Bradley is that Mr. Carnes was not present. Bradley was present at that hearing about his attorney Jordan. Mr. Carnes' counsel didn't do anything, didn't file the necessary motions or advocate for his position. Bradley's attorney did. They were there in court. They filed the right motions and put the issue before the court. And then what you focused on in that decision is the insufficiency of that court's inquiry. If the court in Bradley, discussing the issue of whether Jordan could be substituted, did an insufficient inquiry, then the inquiry here has to be insufficient, because there's almost no inquiry done. The problem there wasn't really insufficient inquiry. It was saying no. I mean, the request was denied even though it wasn't going to require a continuance. And the justification offered by the State later is one that couldn't be supported with sufficient inquiry. I mean, in theory, the court said, and I'm taking you over, in theory, the court said that there would have been a request for a continuance later, but there was nothing on the record at that time developed to establish that. Here, the court was faced with a new attorney who said, but I'm going to need a continuance, because it turned out screw-ups within his office, I guess, but in any event, he said we can't come in unless there's a continuance. The judge says no continuance. Right. I see I'm out of time. I know. Can I respond? Yes. Oh, yes. In this case, the judge didn't even ask how long a continuance would be necessary. For all we know, Ahmed would have only needed a day or two or a week. And given that failure to inquire about how long a continuance was necessary, the judge could make no reason, decision or exercise of his discretion as to whether or not the balance of the Sixth Amendment right to counsel of choice versus the court's duties regarding scheduling. He can't find a way to strike the right balance without actually finding out what kind of continuance would have been necessary. Thank you. Thank you. And we'll hear from the warden or superintendent. May it please the Court, counsel. Greg Rios for Superintendent Jeff Primo. I plan to use my time this morning focusing on the merits, and I'm going to leave the procedural default arguments to my briefing unless the Court has specific questions on that. And I want to focus on the merits because I think the ---- I do have a question on the procedural default. There are two claims, right? Correct. That are, I guess, procedural. No. One is defaulted, the other is not. Do you agree with that? So, yes, there's two constitutional claims, Sixth and Fourteenth Amendment, and they're raised in the context of both an ineffective assistance of counsel claim and a trial court error claim. The procedural default pertain only to the trial court error claims and not the ineffectiveness claim. All right. Now, you know, there is this doctrine in the procedural default cases that if two claims are closely intertwined, if one is exhausted and the other unexhausted claim is, you know, intertwined with the exhausted claim, then you can treat them both as exhausted. Do you think that doctrine might apply here? Correct. And if I'm understanding you, Judge Toshima, you're ---- you may be referring ---- because there's actually two different procedural default claims. One was a fair presentation claim, and that pertained to Sixth Amendment. And the other was ---- pertained to both of them, and that was that the State court did not consider the merits on valid procedural grounds. The fair presentation claim, the claim there was that in its appellate court briefing ---- of course, this wasn't raised at all in the trial court ---- in an appellate court briefing on direct appeal, Petitioner's counsel raised only a Sixth Amendment claim ---- I'm sorry, I got it ---- only the Fourteenth Amendment right to presence claim, did not mention the Sixth Amendment, although at one point, maybe in the petition for review, the words counsel of choice were used. And it's the Superintendent's position that that was not adequate to fairly present the claims. Again, I do think that this case is most easily resolved on the merits, and I think this case is a good candidate for this Court going straight to the merits, because that is the most straightforward way to deny habeas relief. Well, then let's go to the merits, and let me pose the question that I've wondered about. If the Petitioner had been present, I mean, it appeared that the trial court in ultimately saying no was saying no with a specific reference to a position taken by the then-defendant sometime previously in not agreeing to whatever Oregon's version of the Speedy Trial Act is to a continuation of the trial, extension of the time period. If he had been present there at that time and he wanted the new attorney, he could have said something about that and disabused the judge of the notion that he would oppose a continuance. Isn't that something that we're entitled to look at, and I conclude that would have made a difference? No, because the trial court did go ahead and consider whether a continuance would have been appropriate, notwithstanding that there was some confusion about whether or not Petitioner wanted to continue to have a trial within 60 days, which at that point had already been continued on good cause. Mr. Rios, is there any mention at all by the trial judge that even if Mr. Karns waived time, no continuance would be given? Well, there was in that at the end, and it's not real clear in the record, but the trial judge did say, I'm a little confused with what's going on here, given that the only thing I have from Petitioner is this refusal to waive a continuance past 60 days, but in all events, given the facts here, I'm not going to agree to a continuance, because the facts there were that the State had to do with it. Is that what you mean by considered it, when he said I'm not going to grant a continuance? Right. I mean, that's not much of a consideration, is it? It's just a, you know, just a flat-ruling thing. No, because there had been a discussion about, because even though, and this hearing was a little confusing, in that there was no motion to the Court, there was no formal request for continuance. I think it can be best. Well, part of the confusion was that, you know, neither lawyer thought he was representing the Karns, right? Correct. You know, so nobody was there representing the defendant. That's where the confusion came, so nobody was making Karns' case for him. You know, the appointed lawyer says, well, I'm just standing by, waiting to see what your ruling is. And the other lawyer said, well, I want to know if I can get a continuance, because I can't come in without it. And nobody really advocated his case. And it was in that confusion that nobody really advocated for a continuance. And so how could the Court consider it when nobody really said, you know, he needs a continuance? The Court moved forward as if it was considering whether a continuance would be possible, because Mr. Ahmed made it clear at the beginning that his representation was contingent on a continuance. So to that end, the Court opened it up and asked the State whether what the State's view on a continuance was. At this point, it was just sort of an exploratory discussion, because Ahmed couldn't do it without a continuance. And the State vigorously objected, citing witness concerns. Well, the State had an out-of-state witness and a doctor who was not going to be able to testify on another day. And so regardless of the fact that Carnes wasn't there, Petitioner's — what Petitioner wanted was considered by the trial court. And Petitioner has not since then put on any evidence as to what he would say to change that outcome, despite the fact that he had an opportunity to develop the record in State post-conviction proceedings. Show me — is there somewhere in the transcript you can point to that shows that the Court, you know, made a considered judgment on whether or not the Carnes should get a continuance? And when you say considered judgment, Your Honor, do you mean where the Court makes some sort of findings or whether there was — I mean, you said the Court considered it. That's what I want to see, what the consideration was. Just to save time, I think the closest would be probably pages 12 and 13 of the transcript. I don't know if there's an ER number in my book. I guess it's ER 122 and 123. And just to cut to the chase, the last thing the judge says after talking about the possibility of his pro se affidavit and so forth, he says, so if he's going to file something to come through, then I'm not going to be changing my mind. I don't think from what he's going to say, I don't think, okay. Now, reading transcripts is always a mystery, because as you find out when you read a transcript you were participating in, it doesn't seem to make sense when it's printed. But I infer from that the judge has processed — I take it your position is the judge has processed the possibility that if he shows up in person, he's now going to say, I want a continuance. And you take this to say something else, that the judge isn't going to grant the continuance even if the defendant asks for it. So the way I read that, Your Honor, is that we have this conflicting statement from Petitioner, and I don't have anything else in front of me. You see, that gives you some problem, because if you emphasize the conflicting statement, that suggests, well, let's ask him directly to see if he's going to clear it up. And that's the part that gives me pause, because to the extent that the judge is unsure based on this past pro se filing that he doesn't want to extend the time, isn't the logical thing to do is to ask the horse. Right. But they didn't ask the horse. They let the horse sit across the street, and nobody's advocating his position. True. I mean, I understand what you're saying, but I would like to point something else out in the record, in which Mr. Ahmed first talks, first addresses the Court, and that's on 114. And he says, and he's talking about his firm and their discussions about possible representation. And he says, last full paragraph, so we told him, I assume that's Petitioner, that we would come to the Court to see, to Mr. Heslinga, the prosecutor, and see if we could work that out, being a continuance. So, inferably, there has been some sort of discussion between Mr. Ahmed, although he's not representing him and he's not his attorney, that in order for him to take the case, he was going to have to come seek a continuance, which is precisely what he's doing here. Yeah, but the prosecutor says no, and Ahmed doesn't make a pitch to the Court to go find out if the defendant is willing to or is eager at that point to get a continuance. So Ahmed's not there speaking for him. I know you're over. Go ahead. Well, and I just say that inferably, you can infer that since they've had a discussion about it, and that he's there on his behalf or to seek to be on his behalf, that there has been a discussion with Petitioner, and Petitioner does wish to have him represent him and seek a continuance. Thank you. Thank you. Superintendent would ask the Court to affirm the district court's denial of relief. Okay. We'll give you a minute for rebuttal. And I'll just address co-counsel's last point, and I'd point the Court to the excerpt of record at page 114 to 115 and 120 to 21. Those are two statements on the record at the November 23 hearing by Mr. Ahmed. I agree with counsel that Mr. Ahmed is telling the Court that Mr. Carnes wants a continuance and wants to substitute counsel of choice. We can infer that from Mr. Ahmed's statements on those pages. The judge, nevertheless, is saying he's going to assume that Mr. Carnes would not want a continuance based on the verdict. I'm not sure that's true. Let me ask you to focus on the very last statement of the judge, the one that I read. If he's going to file some affidavit, which seems to suggest the only reason he's filing an affidavit is to make clear he wants the continuance, the judge says, then I'm not going to be changing my mind. By that time, he's heard from the prosecutor about the arrangements for the witness to come in that date and so forth. So I hear what you're saying, but I read what the judge says. Why shouldn't I take that to mean the judge has said, even if he says he wants a continuance, I'm not changing the trial date? Because as a matter of law, the Court has to do more than just consider the prosecution's opposition to the continuance. To balance the ---- It's not only the prosecution's objection. Mr. Ahmed asks the Court at 122, is the defendant going to be heard on this, Your Honor? And the Court says, you want him to come over here? And Ahmed says, I'm just asking the question. Well, we could if you would like. Now, Ahmed has already talked to the defendant, and he makes no pitch to have the defendant brought over. He says, well, I don't represent him. And that, Your Honor, I believe is Mr. Ahmed being scared to advocate for the client. He may know that Mr. Carnes would object to a continuance, as he did before. That would contradict what Mr. Ahmed has already told the Court, which is that he conferred with Mr. Carnes, and Mr. Carnes does want him to come to court and ask for a continuance. He said that at pages 114 and 115, the bottom of page 114, continuing on to 115, and 120 to 21 also suggest that Carnes has had a conversation with Ahmed, and they agreed that Ahmed would come to court and ask for more time so that they could get into the case. Thank you. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Tashima, Clifton, Bea